**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO: 19-CV-80825-DMM**

JENNIFER QUASHA, on behalf of her
son, H.Q., a minor

      Plaintiffs

vs.

CITY OF PALM BEACH GARDENS, FLORIDA

      Defendants
_____/

## RESPONSE TO MOTION TO DISMISS

COMES NOW, the Plaintiff, JENNIFER QUASHA, on behalf of her son, H.Q., and responds to the Defendant, CITY OF PALM BEACH GARDENS, FLORIDA, Rule 12(b)(6) motion to dismiss [DE-7], and states as follows:

### I.    Introduction

This matter involves a reasonable accommodation request on behalf of a preschooler who would like to be a part of a T-Ball league in the City of Palm Beach Gardens, and cannot participate because the City of Palm Beach Gardens insists on the ability to sell peanuts at the City's recreation facilities. As a proposed accommodation, they suggested that he play on a different league outside of the City of Palm Beach Gardens. For purposes of this 12(b)(6) motion, the city maintains that a peanut allergy is not a disability under Title II of the Americans with Disabilities Act, because it only occurs because H.Q.'s ability to breathe is only restricted when he consumes or comes near peanuts. When the ADA was amended in 2008, it specifically included in the definition of disability "an impairment that is episodic or in remission is a disability if it would substantially

*Disability Independence Group, Inc. * 2990 Southwest 35th Avenue * Miami, Florida 33133*

limit a major life activity when active." See 42 U.S.C. § 12102(4)(D), as such the defendant's

argument, even if plausible, has been superseded by statute.

## II.     Background and Facts

Six-year old H.Q. likes to play T-Ball in a T-Ball league with his friends in the City of

Palm Beach Gardens, and plays in a league called the Palm Beach Gardens Youth Athletic

Association (hereinafter PBYAA). DE 1, ¶ 7,8,9.  H.Q. has a severe allergy to peanuts and has

asthma, and when he encounters peanuts and has a reaction, his mother uses an epinephrine pen.

Epinephrine, is also known as adrenaline, and is used to address anaphylaxis, which is a serious

allergic reaction that is rapid in onset and may cause death.

There was no problem with H.Q. playing in the PBYAA league in the Fall of 2018.  H.Q.'s

mother, Jennifer Quasha advised the PBYAA that her son was *deathly* allergic to peanuts and

PBYAA accommodated H.Q.'s allergy by (1) As part of the standard maintenance conducted by

City parks crew, the dugouts were swept each day prior to first use of the day; (2) PBGYAA

scheduled all of H.Q.'s Fall T-ball games as the first game, every game day; (3) PBGYAA delayed

the sale of peanuts until the end of the first game; and (4) PBGYAA informed the parent/coach

volunteer of H.Q.'s peanut allergy, which is standard procedure for PBGYAA.  Id. at ¶ 10-11.  In

the spring of 2019 PBYAA league, Ms. Quasha and her husband requested the same

accommodations, and was told no by the Defendant, City of Palm Beach Gardens and their ADA

coordinator, and was advised to join a different T-Ball league, without his friends and in a different

city, the City of North Palm Beach parks.  Id. ¶ 15

The City maintains that under the Americans with Disabilities Act (ADA), that it or its

lessee are not required to cease selling peanuts, items that may contain peanuts, or that may be

processed in a facility with peanuts. <u>Id</u>. at 16.  Further, the City's ADA coordinator claimed that it would constitute a "direct threat" to H.Q. "by merely participating in sports or being anywhere that the potential for contact with peanuts or someone who has recently handled peanuts might occur." <u>Id</u> at 17.  The ADA Coordinator notified and copied the Mayor and City Commission of the City of Palm Beach Gardens of her decision.  <u>Id</u>. at 19 -26.

H.Q.'s mother on behalf of H.Q. sued the City for excluding H.Q. from its programs and services and denying H.Q. a reasonable accommodation under Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

When H.Q. is a first-grader **in the Fall on 2019,** he would like to play in the PBGYAA league with his friends at the City of Palm Beach Gardens.

### III. Standard of Review

Ms. Quasha's Complaint pleads sufficient facts and law to withstand a motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the allegations of claims for relief. The dismissal of a complaint is warranted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." <u>Glover v. Liggett Group, Inc.,</u> 459 F.3d 1304, 1308 (11th Cir. 2006).

On a motion to dismiss, this Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). Those

"[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 570). This means the complaint need only contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the violations alleged. Id.   Given that a motion to dismiss is raised during the pleading stage, before fact-finding has been conducted through discovery, the granting of such a motion is looked upon with disfavor by the courts as a drastic remedy. <u>United States v. CBS, Inc</u>., 459 F. Supp. 832, 834 (C.D. Cal 1978) ("pretrial dismissals are highly disfavored, and will only be handed down with extreme prudence and caution.").

### III.  H.Q. is a Child with a Disability Protected by the Broad Scope of the ADA Amendments Act

The City of Palm Beach Gardens erred in arguing that Plaintiff is not an individual with a disability based on case law that has since been long abrogated by statute. The Americans with Disabilities Act, as amended, construes the definition of disability broadly and Plaintiff easily meets the requirements to establish that he is an individual protected by the statute.  When the ADA was amended in 2008, it specifically included in the definition of disability "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  See 42 U.S.C. § 12102(4)(D).

In 2008, Congress amended the Americans with Disabilities Act to significantly broaden the definition of disability. The ADA Amendments Act ("ADAAA") was a congressional response to a series of Supreme Court decisions that had narrowly construed the term disability.

Pub. L. No. 110-325, § 2 (2008); see also <u>Mazzeo v. Color Resolutions Int'l, LLC</u>, 746 F.3d 1264, 1269 (11th Cir. 2014)

Congress specifically rejected Supreme Court decisions narrowly circumscribing the definition of disability. Congress rejected in particular the Supreme Court decisions requiring that the ADA be "interpreted strictly to create a demanding standard for qualifying as disabled" and creating an "inappropriately high level of limitation necessary to obtain coverage under the ADA." Pub. L. No. 110-325, § 2(b)(4), (5). Congress further rejected the assertion that an individual with a disability "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id. § 2(b)(4).

Congress explained that "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Id. § 2(b)(5); see also <u>Mazzeo</u>, 746 F.3d at 1267. Accordingly, the definition of disability "shall be construed in favor of broad coverage" and "to the maximum extent permitted." 42 U.S.C. § 12102(4)(A); 28 C.F.R. § 35.108(a)(2)(i)

In light of the sea change to the definition of disability that the ADAAA was intended to bring about, the Eleventh Circuit has held that it is an error of law for district courts to rely on inconsistent pre-ADAAA cases. <u>Mazzeo</u>, 746 F.3d at 1267.("Because the critical events in this case—Mr. Mazzeo's continued back problems, scheduled surgery, and termination—took place after the ADAAA went into effect, we apply the post-ADAAA version of the ADA.")

Under the ADAAA, a person is covered if he or she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life

activities include, but are not limited to, sleeping, eating, breathing, concentrating, and thinking. Id. § 12102(2)(A); 28 C.F.R. § 35.108(c)(1)(i). Major life activities also include the operation of major bodily functions including but not limited to "functions of the immune system", digestive, bowel, neurological, respiratory and endocrine functions. 42 U.S.C. § 12102(2)(B); 28 C.F.R. § 35.108(c)(1)(ii).

The Department of Justice regulations implementing the ADAAA make clear that the primary object of attention in cases brought under title III of the ADA should be whether public accommodations have complied with their obligations and whether discrimination has occurred not the extent to which an individual's impairment substantially limits a major life activity." 28 C.F.R. § 35.108(d)(1)(ii). Accordingly, "the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." Id. The term "substantially limits" is "not meant to be a demanding standard," id. § 35.108(d)(1)(i)., and "usually will not require scientific, medical, or statistical evidence," id. § 35.108(d)(1)(vii). The regulations state that in determining whether an individual has a disability, "the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve." Id. § 35.108(d)(3)(iii).

The ADAAA makes clear that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D); 28 C.F.R. § 35.108(d)(1)(iv); see also Mazzeo, 746 F.3d at 1269. The determination of whether a disability exists "shall be made without regard to the ameliorative effects of mitigating measures" such as medication or the use of reasonable modifications. 42 U.S.C. § 12102(4)(E)(i)(III); 28 C.F.R. § 35.108(d)(4)(viii). See e.g. Lawson v. Plantation Gen. Hosp.,

L.P., 704 F. Supp. 2d 1254, 1277 (S.D. Fla. 2010)("the case law is clear: the episodic nature of Plaintiff's sickle cell crises do not necessarily preclude her from establishing a disability under the ADA"); Mileski v. Gulf Health Hosps., Inc., No. CA 14-0514-C, 2016 U.S. Dist. LEXIS 43630, at *60-62 (S.D. Ala. Mar. 31, 2016).

**IV.     Defendant Erred in Relying on Pre-ADAAA Case Law**

In this case, Defendant erred in relying on cases that predated the ADAAA that have now been abrogated.  For instance, Defendant cited Land v. Baptist Med. Ctr., an Eighth Circuit decision dating back to 1999, for the proposition that a peanut allergy is not a disability. 164 F.3d 423, 425 (8th Cir. 1999). Land employed reasoning that is no longer valid under the ADAAA, asserting that food allergy was not a disability because reactions were infrequent. Id. at 425. The amended statute, however, makes clear that an impairment that is episodic qualifies as a disability if it "substantially limits a major life activity when active." 42 U.S.C. § 12102(4)(D); Since Land's reasoning predated the ADAAA, continued reliance on the case has been rejected as abrogated by statute. See Mills v. St. Louis Cty. Gov't, No. 4:17cv0257 PLC, 2017 U.S. Dist. LEXIS 114800, at *13-*14 (E.D. Mo. July 24, 2017) (holding that reliance on Land was error because it was decided prior to the ADAAA).  Furthermore, Defendant also erred in relying on Slade v. Hershey Co., an unreported district court decision that arose under pre-ADAAA law. No. 1:09-CV-00541, 2011 U.S. Dist. LEXIS 81270 (M.D. Pa. July 26, 2011).   Slade cited Sutton v. United Air Lines, 527 U.S. 471 (1999) for the proposition that a peanut allergy is not a disability because the plaintiff could "mitigate the symptoms of her disability." Id. at *14 (citing Sutton). However, Sutton was one of the Supreme Court cases that the ADAAA explicitly abrogated, Pub. L. No. 110-325, § 2, and the statute as amended requires that disability determinations be "made without regard for the

ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(E)(i). Defendant further erred in quoting Slade for the proposition that a disability must be measured by the duration of the impairment and have a long-term impact, when the amended statute provides that a person can have a disability even if the impairment is episodic. See id. § 12102(4)(D);

Post-amendment case law shows that individuals with food allergies can be individuals with a disability. Most recently, in J.D. v. Colonial Williamsburg Found., No. 18-1725, 2019 U.S. App. LEXIS 16325 (4th Cir. May 31, 2019), the Fourth Circuit found that an eleven year old boy with a gluten-free diet was a person with a disability.  The boy experienced digestive symptoms when he ingested gluten.  Id at 2-3.  The court squarely rejected the appellant's argument that "J.D. can simply avoid foods that contain gluten," and found that "the district court was required to consider the effects of J.D.'s impairment when he's not on a strict gluten-free diet. … As the district court observed, J.D. submitted extensive evidence about the serious consequences to his health when he ingests gluten. That J.D. can avoid these symptoms when he maintains a gluten-free diet is immaterial because it runs counter to the clear mandate of the ADAAA." Id at 11-12.  Other cases around the country have held similarly.  See, e.g., Peterson v. Kelly Servs., No. 2:15-CV-0074-SMJ, 2016 U.S. Dist. LEXIS 138529, at *17-*18 (E.D. Wash. Oct. 5, 2016) (holding that celiac disease can constitute a disability); Phillips v. P.F. Chang's China Bistro, No. 5:15-cv-00344-RMW, 2015 U.S. Dist. LEXIS 159474, at *9-*10 (N.D. Cal. Nov. 23, 2015) (same); O'Reilly v. Gov't of the V.I., Civ. No. 11-0081, 2015 U.S. Dist. LEXIS 84407, at *17 (D.V.I. June 30, 2015) (holding that an allergy can constitute a disability under the ADA).

*Quasha v. City of Palm Beach Gardens, FL*
*Case No.: 19-cv-80825-DMM*
*Page 9 of 9*

**WHEREFORE**, Plaintiff, JENNIFER QUASHA, on behalf of her son, H.Q., respectfully requests the Court DENY Defendant CITY OF PALM BEACH GARDENS, FLORIDA Motion to Dismiss and grant such further relief as this Court deems just and equitable.

Respectfully Submitted on this 24th day of July, 2019.

By: *s/ Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 0084905

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 24, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record in the herewith service list, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Tel:  (305) 669-2822
Fax:  (305) 442-4181
Email: Mdietz@justDIGit.org
        aa@justdigit.org

By: s/ *Matthew W. Dietz*
MATTHEW W. DIETZ, ESQ.
Florida Bar No.: 0084905