UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-80825-CIV-MIDDLEBROOKS

JENNIFER QUASHA, on behalf of her
son, H.Q., a minor,

      Plaintiff,

v.

CITY OF PALM BEACH GARDENS,
FLORIDA,

      Defendant.
_____/

## ORDER DENYING PRELIMINARY INJUNCTION

THIS CAUSE comes before the Court on Plaintiff's Expedited Motion for Preliminary Injunction, filed August 5, 2019 by Plaintiff Jennifer Quasha ("Ms. Quasha"), on behalf of her son, H.Q. (DE 12). On August 20, 2019, Defendant City of Palm Beach Gardens, Florida (" the City") filed a Response (DE 24), to which Plaintiff replied on August 21, 2019 (DE 26). After conducting a thorough review of the record, I will deny the motion.

## BACKGROUND

This is a case about whether, under the Americans with Disabilities Act 42 U.S.C. § 12101 ("ADA"), the City should be enjoined from selling peanuts at one of its parks due to H.Q.'s peanut allergy. Specifically, Plaintiff seeks to enjoin the City from selling peanuts at the City's recreation facility at Gardens Park on days that H.Q. is playing T-Ball. (DE 12 at 1).

H.Q. is a six-year-old boy with "severe allergies to tree nuts and peanuts." (DE 12 at 2). In the fall of 2018, H.Q. began playing T-Ball. (DE 12 at 5). Ms. Quasha, H.Q.'s mother, became concerned that H.Q. would have an allergic reaction during a T-Ball game as peanut shells were scattered throughout the dugout. (DE 12 at 5). While the source of these peanuts cannot be

definitively determined, Plaintiff assumes that they came primarily from the Garden's Park concession stand, where peanuts are sold in the shell. (DE 12 at 5).

In the 2018 season, Ms. Quasha voiced her concerns about H.Q.'s possible exposure to peanuts in the dugout. As a result, the City agreed that:

> (1) The dugout be swept each day prior to the first use of the day; (2) all of H.Q.'s Fall T-ball games be scheduled as the first game of every game day; and (3) the park not sell any peanuts until the conclusion of H.Q.'s games.

(DE 12 at 6). Based on that agreement, H.Q. was able to play T-Ball uneventfully during the 2018 season. (DE 12 at 6).

In 2019, the Parties could not reach an agreement about H.Q.'s accommodations. The Parties differ in their explanation for this disagreement. Plaintiff alleges that she requested H.Q. be transferred to a team with his friend, whose parents are a physician's assistant and a nurse practitioner, and therefore could administer H.Q.'s epi-pen if necessary. (DE 12 at 6; Quasha Declaration at ¶ 27). According to Plaintiff, the City refused this transfer, refused to continue sweeping the dugouts, and refused to stop sales of peanuts during H.Q.'s games. (DE 12 at 7; Quasha Declaration at ¶ 28). Allegedly, the City proposed that H.Q. could transfer from the City's Gardens Park League to the nearby North Palm Beach League. *Id.* Plaintiff found the proposed transfer inadequate as "H.Q. does not have any friends that play in the league in North Palm Beach." (DE 12 at 8). Further, Plaintiff wants to ensure that her son can play "in their own city." (DE 12 at 8).

Defendant denies the majority of these allegations and offers in support the unsworn declarations of Daniel Prieto, Deputy Leisure Services Administrator, and Stephen Stepp, Deputy City Manager. First, the City states that they never requested H.Q. transfer to another league, but simply to the North Palm Beach *Park* 1.3 miles away from the Gardens Park. (DE 24 at 13, 18;

2

Prieto Declaration at ¶¶ 5-6; Stepp Declaration at ¶10). At North Palm Beach Park, H.Q. would be "on the same team, with his friends, in the same exact league." (DE 24 at 13; Prieto Declaration at ¶9; Stepp Declaration at ¶12). Indeed, "the city of North Palm Beach did not have a stand alone T-Ball League. The North Palm Beach teams played in the [Palm Beach Gardens Youth Athletic Association]." (Prieto Declaration at ¶6). Further, the City alleges that if H.Q. remained at the Gardens Park the City intended to continue sweeping the dugout, which it had done even before H.Q. began playing. (DE 24 at 13; Stepp Declaration at ¶14).

Given the Parties' inability to reach an agreement regarding appropriate accommodations for H.Q., Plaintiff filed this lawsuit on June 21, 2019 alleging that Defendant was violating Article II of the ADA. (DE 1). The complaint seeks "a permanent injunction enjoining [the City] from continuing its discriminatory practices, allowing H.Q. to participate in its program in a peanut-free environment, and awarding [Ms.] Quasha, on behalf of her son, H.Q.'s damages, [and] her attorney's fees, costs, and expenses incurred in this action." (DE 1 at 7). On August 5, 2019, Plaintiff filed this expedited motion for preliminary injunction because the 2019 T-Ball season is beginning in "mid-September" and H.Q. will be unable to participate if these issues remain unsolved. (DE 12 at 21).

## LEGAL STANDARD

A court may grant a preliminary injunction when the moving party demonstrates: (1) a substantial likelihood that plaintiff will succeed on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if a preliminary injunction is not granted; (3) the threatened injury outweighs the harm a preliminary injunction may cause the defendant; and (4) the grant of a preliminary injunction will not disserve the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). "Because a preliminary injunction is 'an extraordinary and drastic

3

remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (quoting *Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir.1975).

## DISCUSSION

Title II of the ADA requires, generally, that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.[1] 42 U.S.C. § 12182(a). Discrimination is defined as denying "on the basis of a disability or disabilities . . . the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii). To avoid discrimination in violation of the ADA, public entities are required to "make reasonable modifications in policies, practices, or procedures" to ensure non-discrimination, so long as providing such accommodations would not "fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182 (2)(A)(ii).

When determining whether a requested modification is required, the Supreme Court has established that the "three inquiries are: (1) whether the requested modification is 'reasonable'; (2) whether the requested modification is 'necessary' for the disabled individual; and (3) whether the requested modification would 'fundamentally alter the nature' of the public accommodation." *A.L. by & through D.L. v. Walt Disney Parks & Resorts.*, 900 F.3d 1270, 1293 (11th Cir. 2018). "The plaintiff bears the burden of proving . . . his requested modification is both 'reasonable' and

---

[1] For the purposes of this Order, I assume without deciding that the sale of peanuts at Gardens Park concessions constitutes an action by a public entity.

'necessary.'" *Id.* at 1292 (11th Cir. 2018) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38 (2001)).

Here, Plaintiff does not meet her burden of proving a substantial likelihood of success as to the reasonableness or necessity of the accommodation sought in this Preliminary Injunction.[2]

**A. Reasonableness**

For purposes of analyzing the appropriateness of a Preliminary Injunction, I will first consider whether Plaintiff has demonstrated a substantial likelihood of success on the merits with respect to reasonableness. I find that Plaintiff has not met her of burden regarding the reasonableness of her proposed accommodation. For an accommodation to be reasonable, the Plaintiff must show that it would enable them to perform the task for which they require the accommodation. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (finding that the proposed accommodation was not reasonable as it would not enable Plaintiff to perform the essential functions of her job, which was the reason she required an accommodation). Here, the accommodation Plaintiff seeks would still not make T-Ball safe for H.Q. As Plaintiff requests only that peanut sales be stopped on days that H.Q. is not playing T-Ball, fans and players in the park could still buy peanuts and strew their shells around the park on any other day. Also, individuals would still be allowed to bring in peanuts on their own, even if they could not buy them from concessions, and would likely still drop the shells on the ground, as that is a custom at baseball games. Thus, it would appear quite likely that, regardless of the accommodation, H.Q. would still

---

[2] While Plaintiff's counsel is correct that a public entity bears the burden of proving an accommodation is a "fundamental alteration," *Brown v. District of Columbia*, No. 17-7152, 2019 U.S. App. LEXIS 20058, *13- *14 (D.C. Cir. July 5, 2019), this showing is only necessary once Plaintiff has established a substantial likelihood of success as to reasonableness and necessity. *Walt Disney Parks & Resorts*, 900 F.3d at 1292. As Plaintiff has not made such a showing, I need not reach the issue of whether the accommodation Plaintiff seeks would be a fundamental alteration.

5

be exposed to peanuts and at risk of an allergic reaction. After all, it is not the conduct of H.Q.'s team that concerns H.Q.'s parents (in fact they insist H.Q. remain with that team), it is others that scatter peanuts in the dugout before H.Q. arrives. As there is no provision for clean-up in the requested injunction, the behavior of park-goers on other days would still affect H.Q. Therefore, I cannot conclude at this stage that Plaintiff is substantially likely to succeed on the merits because, on the record as it stands now, Plaintiff fails to demonstrate that this accommodation is reasonably related to allowing H.Q. to safely play T-Ball. This alone is sufficient to defeat Plaintiff's request for a Preliminary Injunction.

### A. Necessity

Even if Plaintiff has not demonstrated her burden at this stage as to reasonableness, the requested Preliminary Injunction would still fail because Plaintiff has not demonstrated a substantial likelihood of success as to the necessity of the requested accommodation. For an accommodation to be necessary, it must provide disabled individuals with a "like experience" to non-disabled individuals. However, where multiple accommodations would accomplish that objective, "facilities are not required to make the preferred accommodation of plaintiffs' choice," *Walt Disney Parks & Resorts*, 900 F.3d at 1296 (11th Cir. 2018). Indeed, "the reasonable modification requirement can be satisfied in various ways," not just in the manner that the Plaintiff requests. *Tennessee v. Lane*, 541 U.S. 509, 511 (2004). The ADA also does not "require a public entity to employ any and all means" to accommodate a disability. *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1082 (11th Cir. 2007). Nor does an accommodation need to eliminate all "difficulty" for the disabled individual or their family. *Walt Disney Parks & Resorts*, 900 F.3d at 1296 (11th Cir. 2018).

When Ms. Quasha initially raised her concerns regarding H.Q.'s 2019 season, the City proposed that H.Q. play "1.3 miles away" from the Gardens Park at North Palm Beach Park, where he would have the "same schedule, with the same team, with the same friends and against the same opponents."[3] (DE 24 at 18). Playing at this Park would accommodate H.Q.'s disability as, per an email from the Palm Beach Gardens Youth Athletic Association, it is "a much smaller location and we have a lot more control over what is brought into the facility and can better ensure that we are able to provide him a safe peanut-free environment." (DE 15-2, at 2). Although it is not the accommodation which Plaintiff requests, it appears to me that it would be a reasonable one and would provide H.Q. with an experience that is, in all significant respects, identical to the experiences of other T-ball players. The ADA does not require that Plaintiff's proposed solution be instituted, only that H.Q. enjoy a "like experience."

The issue of whether an accommodation is necessary is "inherently fact-intensive" and "largely depends on context." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012). Therefore, I recognize that this issue may be subject to a different analysis as the record in this case develops more fully, and, in theory, I could decide this particular issue differently at a later stage in these proceedings. However, based on the record before me, I determine that Plaintiff has not met her burden of establishing a substantial likelihood of success on the merits and therefore no Preliminary Injunction should be issued.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction (DE 12) is **DENIED.**

---

[3] Plaintiff has not shown that this offer did not take place, and in fact seems to concede as much in her response to the reply. (DE 26 at 5-6).

**SIGNED** in Chambers at West Palm Beach, Florida, this 11 day of September, 2019.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT COURT

Copies to: Counsel of Record